IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00251-PAB-STV

CHRISTOPHER J. RODENFELS, as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000,

    Plaintiff,

v.

PDC ENERGY (fka Petroleum Development Corporation), a Delaware corporation,

    Defendant.

---

# ORDER

---

This matter is before the Court on PDC Energy's Motion to Dismiss or, in the Alternative, to Stay Pending an Appraisal [Docket No. 16]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case concerns a general partner's buyout of the limited partners' interests in oil and gas partnerships and the fiduciary duty claim by one of the limited partners that his interest was grossly undervalued. Docket No. 1.

Defendant PDC Energy is a "domestic independent natural gas and crude oil company" that owns and operates natural gas and crude oil properties in the Colorado region. Docket No. 1 at 2, ¶ 1. In 2004 and 2005, defendant formed oil and gas limited

---

[1] The following facts are drawn from plaintiff's complaint, Docket No. 1, and are assumed to be true for the purposes of this order. *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

partnerships under West Virginia law. Docket No. 1 at 6, ¶ 12. The Christopher J. Rodenfels 2000 Revocable Trust owned four such limited partnerships, and plaintiff Christopher J. Rodenfels sues on its behalf as trustee. *Id*. at 2, ¶ 1. Defendant was the sole managing general partner of these partnerships. *Id*. at 6-7, ¶ 13. In this capacity, defendant acquired the right to explore and develop oil and gas properties, including rights in the Wattenberg Field in Colorado, and transferred those rights to the limited partnerships. *Id*. at 7, ¶ 14.

In 2010, defendant began the process of buying out the limited partners. Docket No. 1 at 9, ¶ 22. In October 2010 and February 2011, defendant issued proxy statements to the limited partnerships stating that it planned to buy out their interests and transition to a "more traditional exploration and production company model." *Id*. at 10, ¶ 23. The proposed transaction, upon approval, would cash out the limited partners and merge the limited partnerships' assets into a special-purpose subsidiary of PDC Energy. *Id*., ¶ 24. Defendant acknowledged in the proxy statements that it had a conflict between its interests and the interests of the limited partners with respect to the transaction because it owed conflicting duties to its own shareholders and the limited partners. *Id*. at 11, ¶ 28. Accordingly, defendant formed a special committee[2] that contracted with an investment banker to draft a fairness opinion regarding the transaction. *Id*. Because the transaction involved a merger, the partnership agreement required that a majority of the limited partners approve the transaction. *Id*. at 12, ¶ 30. The partnership agreements provided that, in the event of such a merger, limited

---

[2] The special committee was made up of four non-employee members of defendant's board of directors. Docket No. 1 at 11, ¶ 28.

partners who voted against the merger would be allowed to elect to receive a continuing interest in the surviving entity or a pro rata share of the partnerships appraised assets. *Id*. However, the proxies used for the merger provided for the elimination of the right to acquire an interest in the continuing entity. *Id*. This also required majority approval. *Id*. at 8, ¶ 20.

The proxies contained an estimation of the value of the partnerships' proved and unproved oil and gas reserves. *Id*. at 13-14, ¶ 34. Defendant used the estimate of a petroleum engineering consulting firm to value the proved reserves. *Id*. Defendant valued the unproved reserves at $10,000 per drilling location. *Id*. Plaintiff voted against the transaction, but a majority of the limited partners approved the mergers. Docket No. 1 at 16-17, ¶¶ 38, 41-42; Docket No. 16 at 3.

Plaintiff alleges that the proxy statements contained material misrepresentations that undervalued the limited partnership units. Docket No. 1 at 19-20. Plaintiff claims that defendant "knew at the time the proxies in question were solicited that infill wells and horizontal wells would substantially increase the volume of oil and gas that each Partnership could produce." Docket No. 1 at 9, ¶ 21; *see also id*. at 15, ¶ 37 ("[T]he estimated value of the reserves accessible by infill wells and by horizontal drilling using assumptions about production, commodity prices and costs that are similar to those that were used to value the proved reserves were known to PDC and should have been disclosed in the proxy statements."). Plaintiff also claims that defendant knew that new extraction technologies such as horizontal drilling and fracking made the drilling rights more valuable, but "failed to disclose its own high valuation of these assets." *Id*. at 18,

¶ 46; *see also id*. at 14, ¶ 35 ("These reserve valuations . . . failed to take into account technological developments that PDC itself had publicly touted as likely to give rise to substantially increased revenues: infill drilling and enhanced recovery from horizontal drilling in the Wattenberg Field in Colorado."). Plaintiff alleges that defendant breached the fiduciary duty it owed as the managing general partner by making material misrepresentations about the value of the limited partnerships' assets. *Id*. at 19, ¶ 52.[3]

Plaintiff joined a class action lawsuit in the U.S. District Court for the Central District of California against defendant under its previous name, captioned *Schulein v. Petroleum Dev. Corp.*, Case No. 8:11-cv-01891-AG-AN. Docket No. 16 at 7.[4] *Schulein*

---

[3] Plaintiff alleges that defendant improperly:

(a.) Failed to disclose that PDC planned to refracture each partnership's existing vertical wells, which was projected by [the petroleum engineering consulting firm] to generate sufficient additional cash flows for each Partnership . . . ;
(b.) Failed to properly value the limited partnership units in light of new drilling techniques, including horizontal drilling and fracking;
(c.) Failed to disclose to the limited partners the increase in value of their units due to the new techniques (drilling and fracking);
(d.) Failed to properly value limited partnerships units in light of the change in regulations that doubled the number of wells permitted;
(e.) Failed to disclose to the limited partners the increase in value of their units due to the change in local regulations that more than doubled the number of wells permitted [in the Wattenberg Field];
(f.) Commissioned an appraisal report that failed to take into account the value of the new drilling techniques and change in regulation; and
(g.) Assigned an arbitrary value of $10,000 per well when it had in possession data that showed the Partnerships' assets had much greater value.

Docket No. 1 at 19-20, ¶ 52.

[4] Plaintiff also initiated an appraisal action in West Virginia state court, but later successfully moved to dismiss that action. Docket No. 16 at 4, 7.

included both federal securities class action claims and breach of fiduciary duty claims that were based on allegations similar to this case. *Schulein v. Petroleum Dev. Corp.*, 2012 WL 12884851, at *4 (C.D. Cal. June 25, 2012). The defendants in *Schulein* moved to dismiss the federal securities claims and the breach of fiduciary duty claims. *Id*. at *7. In the alternative, the defendants requested a stay, *id*., which the court denied. *Id*. at *6. The defendants settled the class action for $37 million. Docket No. 1 at 5, ¶ 9.

Plaintiff opted out of the class action settlement in *Schulein* and, on February 2, 2016, filed the present suit to pursue his breach of fiduciary duty claim. Docket No. 1 at 10.[5] On May 2, 2016, defendant moved to dismiss or stay this action in favor of an appraisal. Docket No. 16. Defendant argues that, under the West Virginia law that governs the transaction at issue, appraisal is the exclusive remedy for an investor who claims the consideration for a merger was insufficient. Docket No. 16 at 9 (citing W. Va. Code § 31D-13-1302). Defendant admits that this law provides an exception to the exclusive appraisal remedy where the merger was "procured as a result of fraud or material misrepresentation," W. Va. Code § 31D-13-1302(d)(2), but argues that plaintiff has failed to plead the proxy statements were fraudulent or contained a material misrepresentation. Docket No. 16 at 9. Specifically, defendant argues that plaintiff "does not allege any false statement by PDC at all." *Id*. If dismissal is denied, defendant argues that the Court should nonetheless stay this proceeding in favor of an

---

[5] The court in *Schulein* subsequently ruled that the individual breach of fiduciary duty claims brought by class members that opted out of the settlement would need to be brought in a separate action. *Schulein*, Docket Nos. 313-14.

appraisal proceeding in the interests of judicial economy because, by doing so, "the burden on PDC and the Court will be reduced." *Id*. at 11.

## II. ANALYSIS

### A. Failure to State a Claim

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim. Fed. R. Civ. P. 12(b)(6); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215 (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

The parties agree that whether plaintiff's exclusive remedy is an appraisal is controlled by W. Va. Code § 31D-13-1302(d). Docket No. 16 at 9; Docket No. 25 at 10. Section 1302(d) provides that a "shareholder entitled to appraisal rights under this article may not challenge a completed corporate action for which appraisal rights are available unless the corporate action: . . . (2) Was procured as a result of fraud or material misrepresentation." This statute was enacted in 2002 and no reported decisions have interpreted the statute since it was enacted. West Virginia Business Corporation Act, 2002 W. Va. 2nd Ex. Sess., ch. 25 (S.B. 2004), eff. Oct. 1, 2002.

Before the new statute was enacted, dissenting shareholder rights in West

Virginia were codified at § 31-1-123.  The text of the statute did not explicitly provide that appraisal was the exclusive remedy for shareholders or provide any exceptions to the appraisal remedy.  *Matter of Fair Value of Shares of Bank of Ripley*, 399 S.E.2d 678, 686-88 (W. Va. 1990) (quoting text of W. Va. Code § 31-1-123 (1966)) ("*Bank of Ripley*").  Nonetheless, the Supreme Court of Appeals of West Virginia, based on the law of other states, recognized appraisal as the exclusive remedy for dissenting shareholders with exceptions in cases of "fraud, unfairness, or illegality."  *Id*. at 682; *see also Persinger v. Carmazzi*, 441 S.E.2d 646, 654 (W. Va. 1994) (quoting same).  The court also recognized that "dissenter's rights statutes are construed favorably toward the shareholder."  *Bank of Ripley*, 399 S.E.2d at 682.  As such, these statutes are "given a reasonable construction rather than a rigid and technical one" and "[d]oubts arising from a lack of precision or accuracy in the statute should, where possible, be resolved in favor of the dissenting shareholder."  *Id*.

Defendant argues that plaintiff has failed to state a claim for fraud or material misrepresentation and therefore his claims must be dismissed because appraisal is his exclusive remedy.  Docket No. 16 at 8.  While plaintiff admits that he does not plead a claim for fraud, he argues that the allegedly false statements regarding the value of the limited partnership units are sufficient to state a claim for "material misrepresentation."  Docket No. 25 at 9.  Defendant argues that its estimates of value are only opinions, not actionable misrepresentations.  Docket No. 26 at 5.  The question is whether, under W. Va. Code § 31D-13-1302(d), the complaint pleads a "material misrepresentation" such that plaintiff fits within that exception to the appraisal remedy.

Misleading value estimates are actionable as misrepresentations in the securities context even when they are based on opinion or are subject to uncertainty. In particular, where the defendant has estimated the value of a property higher than it discloses, such a value estimate is actionable. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del. 1977) ("And when, as here, management was in possession of two estimates from responsible sources one using a 'floor' approach defining value in terms of its lowest worth, and the other a more 'optimistic' or ceiling approach defining value in terms of its highest worth it is our opinion that complete candor required disclosure of both estimates."). Here, plaintiff alleges that "valuations in the proxy statements sent to the limited partners failed to take into account technological developments that PDC itself had publicly touted as likely to give rise to substantially increased revenues: infill drilling and enhanced recovery from horizontal drilling in the Wattenberg Field in Colorado." Docket No. 1 at 14, ¶ 35. Instead, plaintiff alleges defendant assigned "an arbitrary value of $10,000 per drilling location for the infill wells, and failed to disclose its own high valuation" of those wells and potential horizontal wells. *Id*. at 18, ¶ 46. Having provided an estimate of the value, it is potentially misleading for defendant to withhold its own higher estimate of the value when attempting to purchase the interests of the limited partners, to whom it owed a fiduciary duty. "If management believed that one estimate was more accurate or realistic than another, it was free to endorse that estimate and to explain the reason for doing so; but full disclosure . . . was a prerequisite." *Lynch*, 383 A.2d at 281. Even if the valuation provided in the proxies was merely an opinion, the Supreme Court has "held that such statements may be

actionable if they misstate the opinions or belief held, or, in the case of statements of reasons, the actual motivation for the speaker's actions, *and* are false or misleading with respect to the underlying subject matter they address." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011) (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091-96 (1991)) (emphasis in original). Plaintiff sufficiently alleges that the proxies misstated the opinions or beliefs held by defendant by alleging facts from which one could infer that defendant believed the assets were more valuable than it disclosed in the proxies. Docket No. 1 at 14, 18 ¶¶ 35, 46.

Defendant next argues that any failure to disclose the value of the unproved reserves cannot be material and therefore does not trigger the appraisal exceptions to § 1302. Docket No. 26 at 5 (citing *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013), and *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992 (10th Cir. 2002)). Defendant also argues that incomplete statements are not actionable as misrepresentations. Docket No. 26 at 6 (citing *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

The Court disagrees. "[A] duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement." *McDonald*, 287 F.3d at 998 (quoting *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 53 (D. Mass. 1998)) (alterations in original). Applying this framework here, the proxy statement estimated the value of the proved and unproved reserves. Docket No. 1 at 13-14, ¶ 34. That estimation was material because it would have influenced the limited partners' decision about whether to

approve the buyout. *See Slater*, 719 F.3d at 1197 ("A statement is material only if a reasonable investor would consider it important in determining whether to buy or sell stock." (internal quotation marks omitted)). The alleged omissions by defendant were in turn material to the valuation statement. For example, plaintiff alleges that for one of the limited partnerships,

> the limited partners were paid approximately $13.2 million for their limited partnership units. That partnership had 44 vertical wells at the start of 2010. If 32 infill wells and eight Niobrara horizontal wells were included in the estimated value of the assets held by [the limited partnership], the value of the reserves would be more than $100 million, using the SEC's 10% present value discount rate.

Docket No. 1 at 15, ¶ 36. Assuming, as the Court must, that plaintiff's allegations are true, disclosure of defendant's alleged knowledge of such extraction technology's feasibility would have "significantly altered the total mix of information made available" to the limited partners. *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988) (internal quotation marks omitted). Likewise, if defendant estimated that the limited partnership units were more valuable than it disclosed in the proxy statements, as alleged, such information is something a reasonable limited partner would consider in deciding how to vote, and therefore is material. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).[6]

---

[6] The Supreme Court of Appeals of West Virginia has yet to address the limits of the term "material misrepresentation" in the securities context since the adoption of W. Va. Code § 31D-13-1302 in 2002. However, in other contexts, the Supreme Court of Appeals of West Virginia has long recognized that the omission of information can constitute a material misrepresentation. In *Bender v. Metro. Life Ins. Co.*, the court held that an insured's failure to list all of her prior surgical procedures in response to a question on an insurance application was a material misrepresentation that rendered the policy unenforceable. 185 S.E. 907, 908 (W. Va. 1936); *see also Muzelak v. King*

Defendant's argument that it had no obligation to disclose the information is similarly unavailing. Here, plaintiff alleges that defendant "'affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" *Schulein*, 2012 WL 12884851, at *6 (quoting *Brody*, 280 F.3d at 1006) (alterations in original). As such, plaintiff has sufficiently alleged misleading omissions. *See Virginia Bankshares, Inc.*, 501 U.S. at 1098 (finding materially misleading statements where the directors failed to disclose "evidence of a higher book value than the directors conceded" in the solicitation).

The Court finds that plaintiff has sufficiently pleaded "material misrepresentations" by defendant within the meaning of § 1302. In particular, plaintiff pleads that defendant's awareness of and omission from the proxy statements of the regulatory changes and new drilling technologies made defendant's valuation of the limited partnership units materially false. Docket No. 1 at 14-15, 17-18, ¶¶ 35-37, 44-48. Accordingly, the Court will not dismiss plaintiff's breach of fiduciary duty claim based on § 1302.

---

*Chevrolet, Inc.*, 368 S.E.2d 710, 714 (W. Va. 1988) (affirming a used car dealer's failure to disclose a car's service history was a material misrepresentation sufficient to support a punitive damages instruction). Further, the court has recognized that, in the context of real estate transactions, "the test for determining the materiality of a fact in transactions of this nature is whether that fact substantially affects the value of the property." *Darrisaw v. Old Colony Realty Co.*, 501 S.E.2d 187, 192 (W. Va. 1997) (internal quotation marks omitted). Here, the alleged omissions would have substantially impacted the value of the limited partnerships. *See* Docket No. 1 at 15, ¶ 36.

### B. Request for a Stay

The power to stay proceedings comes from courts' inherent power to control the disposition of cases. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (citing *Landis*). In considering whether to stay a pending action, courts in this district weigh the "(1) potential prejudice to the nonmoving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation." *Franklin v. Merck & Co., Inc.*, No. 06-cv-02164-WYD-BNB, 2007 WL 188264, at *2 (D. Colo. Jan. 24, 2007); *see also SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 975878, at *2 (D. Colo. March 22, 2012); *Lilak v. Pfizer Corp., Inc.*, No. 08-cv-02439-CMA-KLM, 2008 WL 4924632, at *2 (D. Colo. Nov. 13, 2008).

Given the Court's denial of defendant's motion to dismiss, defendant has not shown that an appraisal would be dispositive and that, as a result, judicial economy would be served by staying this case. As noted in another case from this district, while an appraisal "might allow the parties to determine potential damages with greater accuracy, the Court does not find this mere possibility sufficient to impose a stay." *Bellco Credit Union v. United States*, No. 08-cv-01071-CMA-KMT, 2009 WL 189954, at *4 (D. Colo. Jan. 27, 2009). Thus, the Court finds that defendant has failed to articulate a basis on which this Court should exercise its inherent power to stay this proceeding.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that PDC Energy's Motion to Dismiss or, in the Alternative, to Stay Pending an Appraisal [Docket No. 16] is **DENIED**.

DATED March 30, 2017.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge